IOWA COOPERATIVE GRAIN CO. v.
FARMERS NAT. GRAIN
CORPORATION.

No. 212.

District Court, D. Delaware.

July 30, 1943.

James R. Morford, of Marvel & Morford, of Wilmington, Del., and James H. Wheat, of Champaign, Ill., for Eugene Curtis, receiver.

W. T. Knowles, Asst. U. S. Atty., of Wilmington, Del., for Farm Credit Administration, objector.

LEAHY, District Judge.

This matter arises after a hearing on petitions for allowances filed by the receiver and his attorney.

Defendant, Farmers National Grain Corporation, was a Delaware corporation formed as an instrumentality for the direct marketing on a nation-wide basis of grain raised by farmers in the middle west. Its past history shows that at one time it marketed 267,600,000 bushels of grain in one year; the value of grain marketed annually varied from $75,215,000 to $134,678,000. It qualified in twenty-seven states and had about fifty branch offices. It employed five hundred persons. Administration expenses varied from $1,236,000 per year to $2,043,-000. It operated two hundred and forty-three terminal elevators.

The government, through Farm Credit Administration, lent defendant some $14,-000,000. In connection with a compromise settlement in 1936, defendant transferred all of its assets to the government in part payment of the loan. At that time FCA advanced an additional $2,000,000 to defendant's stockholders who transferred this sum to defendant for working capital. FCA took the stockholders' notes and their individual stock holdings, thus receiving practically all of defendant's outstanding shares on pledge as security for the $2,-000,000 loan.

To date, FCA has realized approximately $12,000,000 on the original $14,000,000 debt. The amount received on the second $2,000,-

000 advance will be discussed shortly. On June 1, 1938, defendant dissolved under Delaware statutory law. As the members of defendant's board resided in various states throughout the country the cost of calling and holding a meeting amounted to $3,000. Its directors therefore appointed Curtis as their attorney-in-fact and liquidation agent to wind up the corporate affairs. By resolution, the board agreed to pay Curtis $20 per diem plus expenses for his services as such liquidation agent. From then on the directors seem to have faded from the picture. Curtis carried on alone.

Under Sec. 42 of the General Corporation Law of Delaware, Rev.Code of Del. § 2074, a corporation has three years after its dissolution to wind up and completely liquidate. On June 1, 1942, the three year period was about to expire and proceedings were instituted in this court to provide for an orderly method of collecting and liquidating the remaining assets. On June 20, 1941, Judge Nields appointed Curtis as temporary receiver, and on October 24, 1941, Judge Watson (specially assigned) made Curtis permanent receiver.

While acting as liquidation agent—from June 1, 1938, to June 20, 1941—Curtis received $14,135 for services. During this period he obtained the legal services of James H. Wheat, Esq., of the Illinois bar, by means of an arrangement whereby his attorney received $50 per diem and expenses. Wheat has also acted as Curtis' attorney since his appointment as temporary receiver on June 20, 1941.

In Judge Nields' order appointing Curtis temporary receiver it was provided that such receiver would be allowed $20 per diem for each day he was actually engaged in the performance of his duties plus expenses. In Judge Watson's order of October 24, 1941, making Curtis permanent receiver, it was specifically provided that "said receiver is hereby allowed the sum of $20.00 per day for each day he is engaged in the performance of his duties as receiver *as his reasonable compensation,* and shall be allowed his expenses for all time spent by said receiver away from his home in connection with the business of the receivership estate; said receiver shall disburse to himself not oftener than semi-monthly such amounts as may be due him as aforesaid; said receiver shall pay from time to time the traveling expenses of all agents, attorneys, and employees while in the performance of services incidental to the administration of the receivership estate." [Italics mine]

On the basis of these orders, Curtis has paid to himself the sum of $11,225. Wheat, as attorney for Curtis as temporary receiver, has been allowed by this court $2,500 and, as attorney for him as permanent receiver, $8,500. In both his petitions for allowances, Wheat rested his request for compensation on a $50 per diem basis—the same amount he had received from Curtis when the latter was acting as liquidating agent from June 1, 1938 to June 20, 1941.

The winding-up and liquidation is now complete. $111,977.20 remains in the receivership estate.

Both the receiver and his attorney now make a request for further allowances: Curtis wants $33,995, additional and Wheat has asked for $31,300. They both contend that these sums are equitably due them for their entire services for the ante-receivership period covering June 1, 1938, to June 20, 1941, as well as for the time they were acting throughout the receivership proceedings since June 20, 1941. They claim that the amounts heretofore received were merely interim allowances and cannot be considered as payment in full for their efforts. They show that at the time of the commencement of the receivership there existed a red position of over $1,721,271.07 and that this has been changed to a cash position of $111,977.20; and that on the day the temporary receiver was appointed there were litigated assets of $2,300,000 and litigated liabilities of something in excess of $4,000,000.

Passing for the moment the services rendered during the ante-receivership period, the main asset and liability with which the receivership was concerned was a certain cause of action defendant had against another corporation in Illinois, based upon Farmers National Grain Corporation's claim of approximately $2,000,000 and wherein it was also faced with a counterclaim of $4,000,000 in such litigation. This particular matter constituted substantially all the litigated liabilities and assets referred to in the above paragraph. It became necessary for Curtis to apply for and he was appointed ancillary receiver by the District Court of the United States for the Northern District of Illinois to conduct and conclude the litigation pending in that Court. As a result of a settlement, the

subject company here was relieved of the $4,000,000 counterclaim liability and received a net recovery of $109,000. This amount is included in the $111,977.20 which constitute the remaining assets held by the receiver. In addition to the $109,000 recovery, the District Court in Illinois awarded allowances in the total amount of $28,500 and in which both Curtis and Wheat participated. In short, as a result of the Illinois proceeding Curtis received as ancillary receiver $5,000 and Wheat, his attorney, $8,000.

In addition to the settlement of the Illinois litigation, the receiver and his counsel adjusted other litigated liabilities of lesser amount. The expenses of the receivership here, exclusive of receiver's and counsel fees, amounted to $70,000 and has been paid. All creditors have been paid, and approximately $520,000 has been distributed to stockholders, but by a consent arrangement this amount was paid over to FCA who held approximately 99% of the company's shares on pledge. Thus, FCA has received $520,000 in part payment of the $2,000,000 loan to stockholders who transferred the proceeds of such loan to the subject company for working capital in 1936. FCA is the only person with a remaining claim on the $111,977.20 now held by the receiver, and it objects to any further allowances to the receiver or his counsel.

As the requests cover the entire period from June 1, 1938, to date, it is well to sum up the amounts received by the petitioners:

Curtis as—temporary receiver $1,795.00
permanent receiver 9,430.00
ancillary receiver 5,000.00
liquidation agent 14,135.00
———————
Total [1] ............ $30,360.00
Additional request 33,995.00
———————
$64,355.00

Wheat as—attorney for temporary receiver $ 2,500.00
attorney for temporary receiver 8,500.00
attorney for ancillary receiver 8,000.00
———————
Total [2] ............ $19,000.00
Additional request 31,300.00
———————
$50,300.00

At the hearing, an official of the FCA testified that in a certain conference with Curtis and Wheat in Chicago, it was agreed that if the receiver were to be compensated on the basis of $20 per diem and his attorney $50 per diem plus expenses and that they would make no further claim for compensation, the FCA would not appear and object to any allowances made by this court on such a basis. Another such official likewise testified that Curtis came to Washington prior to the institution of these proceedings and agreed to act as receiver on such a basis, and stated that he could hire Wheat as his attorney on the $50 per diem arrangement. Moreover, these officials testified that, although they had read and examined the various petitions for allowances before they were filed by Wheat in these proceedings, the reason FCA did not object to his request for former allowances in the temporary receivership of $2,500 and $8,500 in the permanent receivership was because they considered such figures were based on the $50 a day rate, and they concluded that Wheat was simply carrying out the existing agreement.

Both the receiver and his counsel took the stand and denied any such per diem arrangement; and reiterated that it was at all times their understanding that, in addition to the per diem, they were to be permitted at the termination of the proceedings to ask for an "over-all" request for their services.

Certain significant facts give me trouble. At the time of his appointment as temporary and permanent receiver, Curtis did not advise either Judge Nields or Judge Watson that he would make a claim for services, in addition to what he had theretofore received while acting as liquidation agent from 1938 to 1941. Neither Curtis nor Wheat submitted a bill or claim to Curtis as liquidation agent for services rendered in addition to the $20 and $50 per day each had received during that period. Each order entered by the two judges of this court recited that in so far as Curtis was concerned he was to receive his $20 per day "as his reasonable compensation". If the $20 per day was not to be the entire reasonable compensation he was entitled to, then why were such unambiguous words used? The order which the court signed was prepared by Wheat. When I asked him about this while he was testifying, he

---

[1] These amounts were arrived at on a $20 per diem plus expenses basis.

[2] These amounts were likewise arrived at on a $50 per diem plus expenses basis.

merely stated that the order had been inartistically drawn. Moreover, Wheat included neither a statement nor a prayer in his two petitions for allowances for leave to apply to the court for further or additional allowances covering the same periods mentioned in his petitions.

I find it quite difficult to reconcile the version of Wheat and Curtis, as to the amount of their compensation, with the alleged understanding they had with the officials of FCA. To do this I must accept the sworn statements of one and reject the other as false. I elect to do neither, because there is enough doubt in my mind which leads me to conclude that each believed their own understanding to be the real one. But as FCA was the sole owner of the remaining equity in the corporation, I am unable to see why they refrained from making their appearance on the scene here until the final requests for allowances were made. Even though they thought that the prior allowances were based on what they considered to be the real understanding of the parties, it seems to me unusual that they never appeared in court throughout all these proceedings to show any interest as owners of the equity.

A review of the voluminous pleadings, petitions, reports and accounts filed by the receiver and his counsel in this court convinces me that neither has been fully compensated for the job each has done. I shall not pause to review their manifold activities.

They should not, of course, be compensated for services rendered in connection with the Illinois litigation, as the District Court there has already rewarded them for such work. And I do not think Curtis should have $33,995 more or Wheat an additional $31,300. Since the corporation commenced its liquidation on June 1, 1938, Curtis has received $30,360 and Wheat, $19,000. A further allowance of $15,000 will be made to Curtis, and $12,500 to Wheat. As both will probably incur further incidental expenses in the final clean-up of the liquidation, they may later prove such additional disbursements.

James R. Morford, Esq., of this bar, has acted throughout as associate counsel for the receiver. He requests $5,000 for services, and has made no requests for allowances prior hereto. He has acted more than the role of "local counsel". He has been in constant communication with his associate and the receiver. He has advised them throughout not alone on matters of pleading and procedure in this court, but he has also rendered opinions on the Delaware Corporation Law, advised on matters of policy throughout, and, in general, actively engaged in the liquidation. I shall make an allowance of $3,600 plus $104.46 expenses to Mr. Morford.

An order may be submitted.